# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| J. CHRISTOPHER REECE, Executor of the Estate of Jane D. Reece, Deceased. ) ) ) | CASE NO. 5:15-cv-2117 |
| PLAINTIFF, ) ) | JUDGE SARA LIOI |
| vs. ) ) | MEMORANDUM OPINION |
| CHAMBREL AT MONTROSE-BROOKDALE, ) ) ) | |
| DEFENDANT. ) | |

Before the Court is the motion of defendant Chambrel at Montrose-Brookdale ("defendant" or "Chambrel") to stay proceedings in this matter and to compel arbitration. (Doc. No. 14 ["Mot."].) Plaintiff J. Christopher Reece ("plaintiff or "executor"), executor of the estate of Jane D. Reece ("the deceased" or "the decedent"), opposes the motion (Doc. No. 15 ["Opp'n"]), and defendant has filed a reply. (Doc. No. 17 ["Reply"].) For the reasons that follow, defendant's motion to stay and to compel arbitration is denied.

## I. BACKGROUND

For purposes of the present motion, the following facts are not in dispute, though the parties contest their legal significance. On September 30, 2012, the decedent entered into an independent living residence and services agreement with defendant. (Doc. No. 14-3 ["Residency Agreement"] beginning at 188[1].) The Residency Agreement governed the terms and conditions associated with the decedent's occupation of an apartment in defendant's independent living residential community. Contained within the agreement was an arbitration provision,

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

which required the parties to submit to arbitration "[a]ny and all claims or controversies arising out of, or in any way relating to, [the Residency Agreement] or [decedent's] stay at the [residential community]." (Residency Agreement at 196.) The arbitration clause further provided that the duty to arbitrate any disputes under the agreement survived the decedent's death. (*Id*. at 197.) It is undisputed that the decedent was competent to enter into the agreement.[2] On April 25, 2014, while the decedent was still a resident of Chambrel, she suffered "permanent and irreversible injuries" while being transported by gurney through defendant's parking lot to a waiting ambulance. (Doc. No. 1-2 (Complaint ["Compl."]) ¶¶ 2-7.) Decedent's injuries proved fatal, and she died on May 3, 2014. (*Id*. ¶ 6.)

On February 13, 2015, plaintiff, in his capacity as executor of the decedent's estate, initiated an action against Chambrel and various other entities and individuals in the Summit County Court of Common Pleas. (Doc. No. 14-2 (Complaint of Prior Action ["Prior Compl."]).) The complaint raised claims for wrongful death and bodily injury. (*Id*.) The defendants to this prior action moved the state court to stay the proceedings and compel arbitration, citing the arbitration clause in the Residency Agreement. (Doc. No. 14-3 ["Prior Mot."].) Defendant contends, and plaintiff does not deny, that this action was voluntarily dismissed on August 28, 2015.

Plaintiff filed the present action, again acting in his capacity as the executor of decedent's estate, in state court on September 9, 2015. The complaint contains a single cause of action, sounding in wrongful death under Ohio law. (Compl.) As was the case in the prior action, the

---

[2] Defendant attaches to its motion an "Independent Living Interview," completed on September 28, 2012, showing that the decedent had no issues with her cognitive functions. (Doc. No. 14-3 at 211.) Plaintiff does not challenge the assessment, or otherwise indicate that the decedent lacked the capacity to enter into the Residency Agreement.

present complaint relates to the decedent's accident on April 25, 2014 that purportedly led to her death on May 3, 2014. (*Id*. ¶ 6.) The complaint alleges that, as a result of the accident and the decedent's eventual death, the beneficiaries of the decedent's estate have sustained "the loss of the care, companionship, society and services of their mother as well as suffering mental anguish at her untimely and unnecessary death, and her pain and suffering following her injury that lead to her death on May 3, 2014." (*Id*. ¶ 7.) Defendant removed the action to this Court, on October 13, 2015, on the basis of diversity jurisdiction. (Doc. No. 1 (Notice of Removal) at 3.)

On December 11, 2015, the Court conducted a case management conference wherein it set dates and deadlines to govern this case. (Minutes, Dec. 11, 2015; Doc. No. 12 (Case Management Plan and Trial Order ["CMPTO"]).) Following the entry of the CMPTO, defendant filed the present motion, relying on the arbitration clause in the Residency Agreement to argue that the Court should stay the proceedings and compel the parties to arbitrate the wrongful death claim. Plaintiff opposes the motion on the ground that the decedent's beneficiaries are not signatories to the Residency Agreement, and, therefore, cannot be compelled to arbitrate under the terms of the agreement's arbitration clause.

## II. DISCUSSION

### A. Federal Law Favoring Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see Seawright Am. Gen. Fin. Servs., Inc*., 507 F.3d 967, 972 (6th Cir. 2007) (Section 2 of the FAA "'embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct.

1204, 163 L. Ed. 2d 1038 (2006)). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). All "doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Hehman Bros., Inc.*, 340 F.3d 386, 392 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.) Further, "the FAA preempts state laws and policies regarding arbitration." *Id*. at 393 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)); *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("the FAA preempts state laws applicable *only* to arbitration provisions.") (quotation marks and citation omitted) (emphasis in original). Balanced against the clear policy favoring arbitration is the well settled principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A T & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (quotation marks and citations omitted).

The Sixth Circuit applies a four-pronged test to determine whether an unwilling party can be compelled to arbitrate: (1) the Court must determine whether the parties agreed to arbitrate; (2) the Court must determine the scope of that agreement; (3) if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and (4) if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted); *see Javitch*, 315 F.3d at 624 (court must engage in a "limited review" to determine whether the dispute is arbitrable) (citation omitted).

### B.  Ohio Law Prohibits Compelling Non-signatory Beneficiaries to Arbitrate

Plaintiff insists that the Ohio Supreme Court's decision in *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258 (Ohio 2007), is dispositive on the issue of whether he can be compelled to arbitrate the wrongful death claim on behalf of the decedent's beneficiaries and requires a determination that the claim is not subject to arbitration. In *Peters*, the Ohio Supreme Court addressed the question of "whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the decedent had agreed to arbitrate all claims against the alleged tortfeasor." *Peters*, 873 N.E.2d at 1259. The court answered the question in the negative, ruling that a decedent cannot bind his beneficiaries to arbitrate. *Id*. at 1262. In arriving at this conclusion, the court relied on "two longstanding general principles of law:" that only signatories to an arbitration agreement can be bound by its terms, and that a survival action by a decedent is independent of a wrongful death action brought by the decedent's beneficiaries. *Id*. at 1260.

The court in *Peters* began with the distinction between a survival action and a wrongful death action under Ohio law, and explained:

> when an individual is killed by the wrongful act of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death as well as a wrongful-death action *for the injuries suffered by the beneficiaries of the decedent* as a result of the death. Although they are pursued by the same nominal party, we have long recognized the separate nature of these claims in Ohio.

*Id*. at 1261 (emphasis in original); *see also* Ohio Rev. Code § 2305.21 (providing for survival claims); Ohio Rev. Code § 2125.02(A)(1) (providing for wrongful death claims). Because a survival action belongs to the decedent, the Court reasoned that the decedent could agree that such a claim should be arbitrated during his life or after his death. He could not, however, bind

5

his beneficiaries to arbitrate a wrongful death claim because it did not belong to him. *Id*. at 1262.

### C. The Ruling in *Marmett* and its Impact on Ohio Law

Defendant suggests that *Peters* can no longer be relied upon to shield an unwilling executor from the duty to arbitrate a wrongful death claim on behalf of the estate's beneficiaries because it has been superseded by the United States Supreme Court's later decision in *Marmet Health Care Ctr., Inc. v. Brown*, -- U.S. --, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012). (Mot. at 166.) *Marmet* examined a ruling by the West Virginia Supreme Court that any arbitration agreement purporting to govern actions arising out of care received by residents of nursing homes was unenforceable. Underscoring the important role arbitration plays in resolving disputes, the Court in *Marmet* held that "West Virgina's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA." *Id*. at 1203-04 (citations omitted).

According to defendant, "[t]he Supreme Court of Ohio's decision in *Peters* creates the very same categorical rule that effectively prohibits outright predispute arbitration agreements for the arbitration of wrongful death claims that the *Marmet* [C]ourt found offended federal preemption principles." (Mot. at 167-68.) In support, defendant cites a district court opinion out of the Eastern District of Kentucky that found a similar rule under Kentucky law to be untenable in the wake of *Marmet*. In *Golden Gate Nat'l Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135 (E.D. Ky. Apr. 3, 2015), the district court was asked to consider the Kentucky Supreme Court's ruling in *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581 (Ky. 2012) in light of *Marmet*. In *Ping*, the state's high court held that a nursing home could not compel arbitration under Kentucky's wrongful death statute because the wrongful death claim belonged

6

to the decedent's beneficiaries, who did not sign the arbitration agreement. *Ping*, 376 S.W.3d at 597-98. The district court held that such a state law was preempted by *Marmet* because it ran contrary to longstanding federal law favoring arbitration agreements. Noting that "it is impossible to identify all possible wrongful death claimants at the time an arbitration agreement is signed and the resident is alive," the district court reasoned that "the *Ping* holding would effectively nullify arbitration in the wrongful death context, which is precluded by the FAA." *Addington*, 2015 WL 1526135, at *8.

Two days after defendant filed the present motion, however, the Sixth Circuit had occasion to engage in a review of *Ping* in another case out of the Eastern District of Kentucky. In *Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016), an executor challenged a district court's ruling that *Ping* was no longer viable. The Sixth Circuit found that, under *Ping* and its progeny, the executor was not required to arbitrate the beneficiaries' wrongful death claim. The court explained that the "key distinction between [the case before it] and *Marmet* centers on the identity of the parties to the relevant agreements." *Id*. In *Marmet*, the family members of the deceased all signed the arbitration agreement and thus were, subject to it. In contrast, the only person to sign the arbitration agreement in *Richmond* was the decedent, himself, Charles Nichols. "Thus, Mr. Nichols' wrongful-death beneficiaries never struck the bargain that the family members in *Marmet* did, *Marmet*, then, does not compel us to conclude that *Ping* is preempted." *Id.*

The Sixth Circuit also found that *Ping* does not have a disproportionate impact on arbitration agreements because the Kentucky law was not the type of categorical prohibition on arbitration that the Supreme Court condemned in Marmet because, under *Ping*, nothing precludes a willing beneficiary to enter into an arbitration agreement. Rejecting an argument similar to that

raised in *Addington*—that *Ping* "effectively nullifies" arbitration agreements because it is difficult to identify all possible beneficiaries prior to death—the court emphasized that beneficiaries are "still free to arbitrate their claims[.]" *Id*. at 200. "That they could not be identified at the time the decedent signs the agreement makes no difference." *Id*. (citation omitted).

A similar conclusion is warranted here. The rule in *Peters* is not the type of categorical prohibition on arbitration that was presented in *Marmet*. Rather, beneficiaries remain free to arbitrate wrongful death claims and can be bound to do so if they are signatories to an arbitration agreement. Indeed, the Ohio Supreme Court stated as much in *Peters* when it underscored the fact that "[t]he beneficiaries can agree to arbitrate these claims themselves, but they are not required to do so." *Peters*, 873 N.E.2d at 1262. State courts in Ohio have similarly found that *Peters* is not preempted by *Marmet*, and have held that beneficiaries may not be compelled to arbitrate wrongful death claims where they did not sign the arbitration agreement. *See, e.g. Raber v. Emeritus at Marietta*, No. 15CA18, 2016 WL 1450578, at *6 (Ohio Ct. App. Apr. 8, 2016) ("the FAA does not preempt the Supreme Court of Ohio's holding in *Peters*")*; Wolcott v. Summerville at Outlook Manor, L.L.C.*, No. 15AP-550, 2016 WL 1178579, at *4 (Ohio Ct. App. Mar. 24, 2016) (similar); *McFarren v. Emeritus at Canton*, 997 N.E.2d 1254, 1261-2 (Ohio Ct. App. 2013) (*Peters* does not create a categorical rule prohibiting predispute arbitration agreements and is not in conflict with federal law favoring arbitration). Moreover, because under Ohio law the wrongful death claim is separate and apart from any claim for injuries sustained by the deceased before her death and belongs to her beneficiaries, the deceased's signature on an

arbitration agreement cannot bind her beneficiaries.[3] Accordingly, defendant cannot compel plaintiff to arbitrate the beneficiaries' wrongful death claim.

### III. CONCLUSION

For all of the foregoing reasons, defendant's motion to stay and to compel arbitration (Doc. No. 14) is denied.

**IT IS SO ORDERED**.

Dated: June 30, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] While the complaint references the decedent's "pain and suffering following her injury[,]" the Court does not understand plaintiff to be seeking damages directly attributable to decedent's pain and suffering. (Compl. ¶ 7.) Instead, the complaint appears to seek damages for the pain and suffering decedent's beneficiaries suffered from the knowledge that the decedent suffered prior to her death. (*Id.*) The Court makes no determination at this time as to whether such damages are available under Ohio law.